**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE-OPELOUSAS DIVISION**

| | |
|---|---|
| **KEITH J. HENRY** | **CIVIL ACTION NO. 07-1708** |
| **VS.** | **JUDGE HAIK** |
| **MICHAEL J. ASTRUE,** **COMMISSIONER OF** **SOCIAL SECURITY** | **MAGISTRATE JUDGE METHVIN** |

### *REPORT AND RECOMMENDATION*

Before the undersigned is an appeal of the Commissioner's finding of non-disability.

Considering the administrative record, the briefs of the parties, and the applicable law, it is

recommended that the Commissioner's decision be **REVERSED** and **REMANDED.**

### *Background*

On December 28, 2004, claimant Keith J. Henry filed an application for supplemental

security insurance benefits under the Social Security Act. In his application for benefits, Henry,

who was 32 years old at the date of the hearing, stated he was unable to work due to the effects of

a stroke he suffered on December 2, 2004.[1]  The application for benefits was denied at the agency

level, and a hearing was held before the ALJ.  After hearing testimony, the ALJ referred Henry to

a psychologist for a psychological evaluation, which was conducted January 4, 2007.[2]  Following

that evaluation, the ALJ issued her opinion denying benefits, finding that Henry had not been

under a disability as defined in the Social Security Act since December 28, 2004, the date the

application was filed.

---

[1]The medical records suggest that the stroke actually occurred on December 7, 2004.  Tr. 131.

[2]Tr. 200.

In her sequential analysis, the ALJ found at the first step that Henry had not engaged in substantial gainful activity since December 2, 2004, the alleged onset date. (Tr. 21). At the second step, the ALJ found that Henry had severe impairments of cognitive loss, borderline intellectual functioning, depression, hypertension, and status post cerebrovascular accident. (Tr. 21). At the third step, the ALJ rejected Henry's argument that he met any listing in 20 C.F.R., Part 404, Subpart P, Appendix 1, particularly Neurological Listing 11.04 (Central Nervous System Vascular Accident), and Mental Disorder Listings 12.02 (Organic Mental Disorders), or 12.04 (Affective Disorders). (Tr. 23).

The ALJ assigned a residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently; stand and/or walk for six hours and sit for six hours in combination for eight hours. The claimant can occasionally crouch, crawl, squat, kneel, and balance, but cannot climb ladders or scaffolds. The claimant cannot work around dangerous heights or moving machinery. The claimant can understand, remember and carry out simple instructions and has a moderate difficulty with concentration and persistence, but can do the job. The claimant is limited to occasionally [sic] contact with the public. (Tr. 23).

At the fourth step, the ALJ found that Henry was unable to perform his past relevant work as a galley hand. (Tr. 26).

At the fifth step, after hearing testimony from a vocational expert, the ALJ found Henry not disabled under section 1614(a)(3)(A) of the Social Security Act. (Tr. 26, 27). This appeal followed.[3]

---

[3] The VE testified that an individual with Henry's age, education, work experience, and residual functional capacity, as posited by the ALJ, would be able to perform such jobs as small products assembler, housekeeping cleaner, and laundry press operator.

## *Assignments of Error*

Henry raises the following issues on appeal:

I.      The ALJ's findings that Henry did not meet the listings of either 11.04(A) or
        12.02 are not supported by substantial evidence; and,

II.     The ALJ committed legal error by positing a hypothetical question to the
        vocational expert that did not include all of Henry's impairments; specifically, the
        ALJ did not include the I.Q. test results, developed post-hearing, that showed
        Henry was in the mildly mentally retarded range.

## *Standard of Review*

The court's review is restricted under 42 U.S.C. §405(g) to two inquiries: (1) whether the

Commissioner's decision is supported by substantial evidence in the record; and (2) whether the

decision comports with relevant legal standards.  Carey v. Apfel, 230 F.3d 131, 136 (5th Cir.

2000); Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir.1992); Greenspan v. Shalala, 38 F.3d 232,

236 (5th Cir. 1994).  Substantial evidence is such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion.  Carey, 230 F.3d at 136; Anthony, 954 F.2d at 292;

Carrier v. Sullivan, 944 F.2d 243, 245 (5th Cir. 1991).  The court may not reweigh the evidence in

the record, nor substitute its judgment for that of the Commissioner, even if the preponderance of

the evidence does not support the Commissioner's conclusion.  Carey, 230 F.3d at 136; Johnson

v. Bowen , 864 F.2d 340, 343 (5th Cir.1988).  A finding of no substantial evidence is appropriate

only if no credible evidentiary choices or medical findings exist to support the decision.

Johnson, 864 F.2d at 343.

In determining whether a claimant is capable of performing substantial gainful activity,

the Secretary uses a five-step sequential procedure set forth in 20 C.F.R. §416.920(a),

summarized as follows:

1.      If a person is engaged in substantial gainful activity, he will not be
        found disabled regardless of the medical findings.

2.      A person who does not have a "severe impairment" will not be
        found to be disabled.

3.      A person who meets the criteria in the list of impairments in
        Appendix 1 of the regulations will be considered disabled without
        consideration of vocational factors.

4.      If a person can still perform his past work, he is not disabled.

5.      If a person's impairment prevents him from performing his past
        work, other factors including age, education, past work experience,
        and residual functional capacity must be considered to determine if
        other work can be performed.

Wren v. Sullivan, 925 F.2d 123, 125 (5th Cir.1991) (summarizing 20 C.F.R. §404.1520(b)-(f)

and §416.920(b)-(f)).

Under the first four steps of the inquiry, the burden lies with the claimant to prove

disability. Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995). The inquiry terminates if the

Commissioner determines at any point during the first four steps that the claimant is disabled or

is not disabled. Id. Once the claimant satisfies his or her burden under the first four steps, the

burden shifts to the Commissioner at step five to show that there is other gainful employment

available in the national economy that the claimant is capable of performing. Greenspan v.

Shalala, 38 F.3d 232, 236 (5th Cir. 1994). This burden may be satisfied either by reference to the

Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other

similar evidence. Fraga v. Bowen, 810 F.2d 1296, 1304 (5th Cir.1987). The burden of proof then

returns to the claimant to rebut the Commissioner's showing. Masterson v. Barnhart, 309 F.3d

267, 272 (5th Cir.2002). A finding that a claimant is not disabled at any point in the five-step

review is conclusive and terminates the analysis. <u>Lovelace v. Bowen</u>, 813 F.2d 55, 58 (5th Cir.1987).

*Discussion*

In her decision, the ALJ concluded that, while severe, Henry's mental impairments did not meet Listing 12.02 (Organic Mental Disorders) or 12.04 (Affective Disorders) because the required limitations of function in Part B were not satisfied, and Henry did not meet the alternative criteria in Part C.[4]  To satisfy Part B, the claimant must have two marked limitations of function.  The ALJ found that Henry had no marked limitations of function:

> Under Part B, the Administrative Law Judge finds that the claimant has mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace.  Lastly, the Administrative Law Judge finds that the claimant has had no episodes of decompensation.

> Under Part C of the listings in Section 12.00, there is no evidence that the claimant meets the listed criteria.

> The Administrative Law Judge concludes the claimant suffers from cognitive loss, borderline intellectual functioning and depression.  The evidence supports a finding that his impairments have more than a minimal adverse effect on the claimant's ability to perform the basic activities of work.  Therefore, these conditions also constitute severe impairments for the purposes of these proceedings.

> The ALJ's analysis of the Section 12.00 Listings is supported by substantial evidence.

As to Listing 11.04, which falls under the Neurological category (Central nervous system vascular accident), the ALJ stated simply, "the Administrative Law Judge rejects [the] claimant's assertion that the claimant's impairments meets Listing 11.04."  (Tr. 23).[5]

---

[4] Tr. 22-23.

[5]  See Tr. 223 - 228, wherein Henry's attorney argued the applicability of Listing 11.04.

Henry contends that the ALJ erred in concluding that Henry's impairments did not meet Listing 11.04(A)(Central Nervous System Vascular Accident). For the reasons stated below, I agree, and specifically find that the ALJ's conclusion is not supported by substantial evidence.

Most of listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, do not have specific time periods attached to them. For these listings, the impairment must last or be expected to last for a continuous period of twelve months:

> Most of the listed impairments are permanent or expected to result in death, or a specific statement of duration is made. For all others, the evidence must show that the impairment has lasted or is expected to last for a continuous period of at least 12 months.

20 C.F.R. § 416.925(a).

Listing 11.04 is one of the few listings which does carry a specific statement of duration - only three months:

> **11.04 Central nervous system vascular accident**. With one of the following more than 3 months post-vascular accident:
>
> A. Sensory or motor aphasia[6] resulting in ineffective speech or communication;
> * * *

---

[6] Aphasia is "impaired or absent comprehension or production of, or communication by, speech, writing, or signs, due to an acquired lesion of the dominant cerebral hemisphere."

Motor aphasia is "a type of aphasia in which there is a deficit in speech production or language output, often accompanied by a deficit in communicating by writing, signs, etc. The patient is aware of the impairment." Synonyms are anterior aphasia, ataxic aphasia, Broca aphasia, expressive aphasia, and nonfluent aphasia.

Sensory aphasia is aphasia "in which there is impairment in the comprehension of spoken and written words, associated with effortless, articulated, but paraphrasitic, speech and writing; malformed words, substitute words, and neologisms are characteristic. When severe, and speech is incomprehensible, it is called jargon (aphasia). The patient often appears unaware of the deficit." Synonyms are fluent aphasia, impressive aphasia, posterior aphasia, psychosensory aphasia, receptive aphasia, and Wernicke aphasia.
Stedman's Medical Dictionary, 27th Edition (1999), p. 110.

A plain reading of Listing 11.04(A) and 20 C.F.R. § 416.925(a), applied to the relevant medical records, supports a finding that Henry met Listing 11.04(A).

In her decision, the ALJ did not specifically discuss Listing 11.04(A)'s duration requirement or claimant's aphasia, except to state that the listing was not met, that on "September 2, 2005...the diagnosis was history of aphasia/apraxia, but . . . the claimant was doing better and [was instructed] to continue speech therapy"(Tr. 21), and that claimant's speech was 100% intelligible at the time of the hearing on November 26, 2006, and at Dr. Greenway's post-hearing evaluation (Tr. 23, 24, 21).

The ALJ concluded that Henry's speech problem should be evaluated as a cognitive disorder because, "[b]ased on the medical records, it appears that the claimant does not have a problem speaking the words, but finding the words to speak."[7] By characterizing Henry's speech problem as a "cognitive," i.e. mental, disorder, the ALJ effectively found that Henry did not suffer from aphasia under Listing 11.04, which falls under Neurological Impairments. This was error.

Aphasia is not limited to impairments in the physical production of speech. Aphasia is defined by Stedman's Medical Dictionary, 26th Edition, as "[i]mpaired or absent comprehension or production of, or communication by, speech, writing, or signs, due to an acquired lesions of the dominant cerebral hemisphere." The Stroke Association states that aphasia may cause

---

[7] Tr. 21.

difficulty "finding words to express a thought."[8] Listing 11.04(A) itself recognizes that aphasia affects not only speech, but also communication.

The undisputed medical evidence of record shows that Henry met Listing 11.04(A). Henry suffered a central nervous system vascular accident (a stroke) on or about December 7, 2004.[9] All of the medical records, from admission to the hospital to beyond the three-month duration period of the listing, show that Henry suffered from aphasia and apraxia as a result of his stroke.[10]

Henry was discharged from Louisiana State University Medical Center (LSUMC) on December 17, 2004, with diagnoses, *inter alia*, of unspecified cerebral artery occlusion with cerebral infarction and aphasia. (Tr. 142). Dr. Christina Weilbacher, of LSUMC, gave Henry a prescription for outpatient speech therapy and cognitive therapy. (Tr. 181). An LSUMC Neurology Clinic record on January 10, 2005, noted "Expressive Aphasia" and noted "Max Recovery 6 - 12 months." (Tr. 141). A Speech-Language evaluation by LSUMC on January 11, 2005, diagnosed "aphasia and apraxia of speech"[11] and reviewed Henry's speech and communication skills as follows:

---

[8] *See* online, Stroke Association, "Aphasia vs. Apraxia," http://www.strokeassociation.org/presenter.jhtml?identifier=3030925, accessed March 7, 2009.

[9] See, *inter alia*, Tr. 142, Discharged Diagnosis(s)/Procedure(s) Summary; Medicare DRG, 014, intracranial hemmorhage or cerebral infarction; Principal Diagnosis, 43491 unspecified cerebral artery occlusion with cerebral infarction; Secondary Diagnoses, 43330 occlusion and stenosis of multiple and bilateral precerebral arteries without cerebral infarction; and, 7843 aphasia.

[10] Tr. 126 - 181.

[11] Apraxia is defined as "A disorder of voluntary movement, consisting of impairment in the performance of skilled purposeful movements, notwithstanding the preservation of comprehension, muscular power, sensibility, and coordination in general; due to acquired cerebral disease. Stedman's Medical Dictionary, 26[th] Edition, p. 119.

Receptive skills [with] moderate impairment. Pt able to answer simple Y/N questions, complex Y/N = 60%; One step command = 80%; 2 step commands <50%. Sentence comprehension greatly affected by apraxic speech. Expressive skills exhibited by pt are severely impaired = automatic speech completed [with] Mod. A - Pt able to count from 1 - 20, days of week with starter. Unable to complete alphabets or months of the year. Repetition greatly affected by apraxia of speech. Naming of objections [approximately] 70% [with] apraxic errors prevalent, naming pictures = 70% [with] apraxic tendencies. (Tr. 178).

On January 24, 2005, Dr. Kevin Hargrave, of Comprehensive Neurologic Center, recorded "motor aphasia." (Tr. 154). Henry continued speech therapy for several months. A follow up examination at LSUMC on March 4, 2005, by the LSUMC Neurology clinic, noted "aphasia, apraxia" and instructed Henry to "continue speech therapy." (Tr. 167). Henry continued speech therapy for aphasia at LSUMC Speech Clinic through May 9, 2005, beyond the three month required period.[12] There is no record in the file showing that Henry was successfully discharged from speech therapy.

Even past the relevant time period, on August 30, 2005, a progress note from LSUMC Audiology and Speech-Language Pathology showed Henry came in for a follow-up visit, and noted Henry may need a neurological evaluation, and needed a speech reevaluation, as his last appointment with the speech clinic was May 2005. (Tr. 199).

On September 2, 2005, a chart note by the LSUMC internal medicine clinic says "doing better," but advised Henry to "continue speech therapy." (Tr. 197). It is unclear whether Henry ever had a neurological evaluation or a reevaluation by the speech clinic, as LSUMC misplaced Henry's chart from September 2005, forward. (Tr. 227).

---

[12] Tr. 157.

For the reasons given above, I conclude that the ALJ's finding that Listing 11.04(A) was not met is not supported by substantial evidence of record. The medical record shows Henry had a stroke that resulted in aphasia that resulted in ineffective speech for over three months. Accordingly, Henry is entitled to disability benefits consistent with his application date of December 28, 2004.

The ALJ found, at the fifth step of the analysis, that Henry was not disabled. The undersigned finds that substantial evidence may exist in the record to support the ALJ's finding that at least by the time of the hearing, Henry's condition had improved, and he was not under a disability. However, the evidence was measured by an improper standard, given that the undersigned finds Henry met Listing 11.04(A), and was disabled. That is, in disability cases involving a closed period of disability, the "medical improvement standard" places the burden on the Commissioner to prove the claimant is no longer disabled as of the cessation date. Waters v. Barnhart, 276 F.3d 716 (5th Cir. 2002). However, the ALJ's finding that Henry was not disabled was made under the five-step sequential review. Therefore, the undersigned recommends remand to the Commissioner for a determination whether and when the claimant's disability may have ceased under the relevant standards.

### *Recommendation*

For the reasons given above,

**IT IS THE RECOMMENDATION** of the undersigned the decision of the Commissioner be **REVERSED and REMANDED**, and that Henry be awarded disability benefits consistent with an onset date of December 28, 2004.

It further **RECOMMENDED** that on remand, the ALJ be required to determine whether Henry continues to be disabled, or whether he has had medical improvement such that he is no longer disabled under the applicable cessation analysis.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have ten (10) business days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after receipt of a copy of any objections or responses to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within ten (10) days following the date of receipt, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Signed at Lafayette, Louisiana, on March 7, 2009.

Mildred E. Methvin
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)